UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 1:22-CV-20864-DPG**

MICHAEL DAVID TAYLOR,

     Plaintiff,

vs.

OFFICER A. KUNCAS,

     Defendant.

_____/

### <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant, ANDREW KUNCAS ("KUNCAS"), by and through his undersigned counsel, pursuant to Rule 56, *Fed.R.Civ.P.*, and Local Rule 56.1, *S.D.Fla.L.R.*, moves for the entry of summary judgment, and states as follows:

*Introduction*

1.  Plaintiff filed suit against KUNCAS, a Town of Bal Harbour law enforcement officer, alleging an array of constitutional violations stemming from Plaintiff's arrest on January 10, 2021.  The factual events underpinning Plaintiff's claims are not at issue (in fact, they were captured on video), thereby leaving only issues of law for the Court.  Specifically, the issue for the Court's determination is whether KUNCAS violated Plaintiff's constitutional rights in effecting his arrest.  Since KUNCAS has invoked qualified immunity as a defense, all of Plaintiff's claims fail as a matter of law if KUNCAS had either probable cause, or the lesser standard of arguable probable cause, to arrest Plaintiff for any offense.

2.    Based upon Plaintiff's actions during the subject incident, which are set forth in Defendant's accompanying Statement of Facts, actual probable cause existed to arrest Plaintiff. At a minimum, KUNCAS would be entitled to qualified immunity under the arguable probable cause standard since a reasonable officer in his position could have believed that Plaintiff's actions violated Florida's laws against openly carrying weapons and/or obstructing pursuant to §843.02, *Fla. Stat.* Plaintiff acknowledges his refusal to identify himself during an investigation (*Terry* stop).  *D.E. 1-1*, ¶¶42-50.

*Basis for Entitlement to Summary Judgment*

3.    At the time of the subject occurrence, Florida law precluded openly carrying firearms absent the application of an exception.  See, §§790.053, 790.25.   When Plaintiff encountered Defendant, KUNCAS, Plaintiff was parading over a bridge in Bal Harbour with a Gadsden ("Don't Tread on Me") flag, an AR-15 strapped to his chest, and a Glock pistol at his side.  By all appearances, he was seeking to make a political point.  As it turns out, he was. Plaintiff fashions himself as an open carry gun advocate.  He makes a living off of a YouTube channel promoting the open carry of weapons.   He plainly did not travel 100 miles from his home and randomly select Bal Harbour because of the quality of its fish.   But even if he did, that certainly would not have been the reasonable interpretation of any law enforcement officer, let alone every reasonable officer.

4.    Plaintiff's sole basis for urging that his arrest was not lawful stems from §790.25(3)(h), *Fla. Stat.*, which creates an exception to the open carry prohibition when one is "engaged in fishing, camping, or lawful hunting or going to or returning from a fishing, camping, or lawful hunting ***expedition***."   (emphasis added)

2

5.      While the statute's intent conjures up images of individuals returning to their vehicle from the woods in hunting/fishing gear, or arming themselves on the open water for protection, Plaintiff has an entirely different interpretation, and one that is perverse and contrary to any reasonable statutory intent.   According to Plaintiff, anyone can openly carry virtually any firearm at any time so long as the individual professes to be on his way to fish or coming back from fishing.   Plaintiff believes one may with walk through golf courses with water hazards, public parks with little ponds, and shopping center public walkways with high-powered automatic weapons so long as the individual throws a little pocket fisherman in the back pocket and has (or expresses) an intent to drop it in some nearby water with some sea life.   *Taylor Deposition,* 39:11 – 39:22.

6.      Importantly, at the time of his arrest, Plaintiff had no reasonable appearance of fishing or going to/coming from a fishing "expedition."   He appeared to be making some sort of political statement while holding a fishing pole as a prop.   Nonetheless, Plaintiff was asked by KUNCAS where he intended to fish and, as it turns out, each place he identified did not allow fishing, including at the Bal Harbour jetty.   In addition, when detained and asked to identify himself, Plaintiff refused to do so, as his Complaint acknowledges.   *D.E. 1-1*, ¶¶42-50

7.      Based upon the pleadings, deposition of Plaintiff and Declaration of KUNCAS filed herewith, Defendant is plainly entitled to summary judgment as a matter of law since his arrest of Plaintiff was with actual and/or arguable probable cause.

WHEREFORE, Defendant, ANDREW KUNCAS, moves for the entry of summary judgment.

<u>**MEMORANDUM OF LAW**</u>

**A. PROBABLE CAUSE (ACTUAL AND/OR ARGUABLE) EXISTED TO ARREST PLAINTIFF'S ARREST FOR VIOLATING FLORIDA'S OPEN CARRY PROHIBITION.**

  **1.  Probable Cause.**

Under state and federal law, an arrest made with probable cause does not violate the Constitution.   Probable cause exists when an arrest is objectively reasonable based upon the totality of circumstances.  *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003)(citing, *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003).  "This standard is met when the facts and circumstances within the *officer's knowledge*, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Id.*   The Eleventh Circuit has noted that in determining whether probable cause exists, "we deal with probabilities . . . [which] are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."   *Rankin v. Evans*, 133 F. 3d 1425, 1435 (11th Cir. 1998) (citations omitted).

Probable cause is "judged not with clinical detachment but with a commonsense view to the realities of normal life."  <u>Id.</u> at 1436; see also, *Lemus v. State*, 158 So.2d 143 (Fla. 2d DCA 1963) (an officer need not eliminate all possible defenses in order to make a valid arrest because facts constituting probable cause need not meet the standard of conclusiveness needed to convict). "Although probable cause requires more than suspicion, it does not require convincing proof, and not need reach the same standard of conclusiveness and probability as the facts necessary to support a conviction."  *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).

4

2.   **Qualified Immunity and the Arguable Probable Cause Standard.**

Qualified immunity allows government employees to carry out their discretionary duties without fear of litigation, "protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  The doctrine of qualified immunity protects government officials from performing discretionary functions from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). It is the plaintiff's burden to show that qualified immunity is not appropriate. See *Wood v. Kessler*, 323 F.3d 872, 877 (11th Cir. 2003).

"To receive qualified immunity, the officer must first show that he or she acted within his discretionary authority." *Lewis v. City of West Palm Beach, Fla.,* 561 F.3d 1288, 1291 (11th Cir.2009). The undisputed record, as well as the allegations here, establish that KUNCAS was acting within his discretionary authority in investigating a crime and effecting an arrest.   Once that burden is satisfied, a government official is shielded from liability unless: (1) the claimant establishes that the official violated his rights; and (2) the violation of rights at issue is "clearly established." *Denson v. U.S.,* 574   F.3d 1318, (11th Cir. 2009) *(*citing*, Pearson v. Callahan,* 129 S.Ct. 808, 818 (2009)); *Bates v. Harvey*, 518 F.3d 1233 (11th Cir. 2008).   "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right, (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right,

or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1291-1292 (citing, *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007); *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (internal citations omitted).   In the instant case, Plaintiff cannot carry his burden by showing that clearly established law exists given the dearth of case law demonstrating that an arrest for violation of open carry under comparable circumstances has been deemed unlawful

Also, in cases involving a claim that an arrest violated the *Fourth Amendment*, qualified immunity depends only upon whether ***arguable probable cause*** existed.   Arguable probable cause does not require a showing of convincing proof and is legally distinct from the higher standard required for probable cause."   See, *Jones v. Cannon*, 174 F.3d 1271, 1283, n.3 (11th Cir. 1999).   The inquiry then is ***not*** whether a reasonable officer in the position of the subject officer ***would*** have found probable cause existed, but whether a reasonable officer possessing the same information as the defendant officer merely ***could*** have believed it did.   *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010); *Draper v. Reynolds*, 368 F.3d 1270, 1275 (11th Cir. 2004); *Durruthy,* 351 F.3d at 1089; *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed"). "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors."   *Lee*, 284 F.3d at 1195 (internal quotation marks and internal citations omitted).

6

Here, Plaintiff was admittedly walking through Bal Harbour carrying his Gadsden flag, an open AR-15 and an open pistol at his side.   A reasonable officer would have believed, or at an absolute minimum, could have believed that this violated §790.053, *Fla. Stat.*, which makes it a criminal offense to openly carry firearms.   ***Plaintiff's assertion that an exception applied is one to be resolved by the criminal justice system, and not an officer on scene through conducting a mini trial.***   Even if, however, KUNCAS were to have considered every conceivable exception to the criminal statute -- or just the one cited by Plaintiff -- it is not clearly established that Plaintiff's actions so obviously fall within the exception.   It was not clear to KUNCAS, nor would it have been to every reasonably officer, that Plaintiff was going to or coming from a fishing ***expedition***. As KUNCAS attests to in his Declaration, Plaintiff's rod and reel were not spooled with line through the rod eyelets, there were no tackle or hooks attached, and he did not have any live bait. He had no bucket, fishing knife or net.   He was walking around with a political flag, not fishing.

Significantly, the statutory language within the exception does not permit a solo person to carry a firearm simply because he was (or possibly was) going to or coming any type of fishing. The statutory language instead incorporates the word "expedition," which connotes much more than an intent to fish alone.   §790.25(3)(h), *Fla. Stat.*   It must be an ***expedition,*** or the exception does not apply.   A search of the world's most popular search engine, Google, for "definition of expedition" produces this result: "a journey or vague undertaken by ***a group of people*** with a particular purpose, especially that of exploration, scientific research, or war."   *Kuncas Declaration,* ¶10, Ex. B (emphasis added).   KUNCAS has affirmed that it was his understanding then (and remains so) that someone alone with a fishing pole would not meet the statutory exception that requires that one be on an expedition.   *Id.*   The legislature did not intend to confer

unfettered open carry rights on someone fishing off a jetty in a populated suburban community. Consequently, a reasonable officer in KUNCAS' position could have reasonably determined that Plaintiff violated §790.053, and that he did not fall within any enumerated exception thereto.

Finally, the areas where Plaintiff professed an intent to fish that day were posted with signs prohibiting fishing, which further casted doubt on the legitimacy of his actions. *Kuncas Declaration*, ¶9.

Based upon this, KUNCAS' arrest of Plaintiff was based upon probable cause. But if not, it was clearly based upon arguable probable cause, thus entitling KUNCAS to qualified immunity and judgment on all claims.

**B. KUNCAS ALTERNATIVELY HAD PROBABLE CAUSE AND/OR ARGUABLE PROBABLE CAUSE TO ARREST PLAINTIFF FOR VIOLATING §843.02, *FLA. STAT.***

The initial encounter between Plaintiff and Defendant materialized because KUNCAS was dispatched following a 911 call regarding a man carrying a shotgun on the bridge. Given the nature of the 911 call and his observations, KUNCAS plainly had a right – if not an outright obligation – to detain Plaintiff and investigate whether Plaintiff was violating state law, based upon reasonable suspicion. To be certain, even if an open carry exception arguably applied, KUNCAS was permitted to detain Plaintiff a reasonable amount of time to make that determination.

Under both state and federal law, law enforcement officers are entitled to seize and detain individuals. *U.S. v. Sharpe*, 470 U.S. 675 (1985)(the Fourth Amendment does not prohibit reasonable seizures). A detaining officer must have "reasonable suspicion" to make the type of stop commonly referred to as a "*Terry Stop*." See, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968); *U.S. v. Nicolas*, 363 F.3d 1141 (11th Cir. 2004).

8

In *U.S. v. Nicolas*, the Eleventh Circuit explained the scope of the phrase "reasonable suspicion" in more detail.   Officers are entitled to detain an individual if, "under a totality of the circumstances, from the collective knowledge of the officers involved in the stop, they had an objectively reasonable suspicion that [the detainee] had engaged in or was about to engage in a crime."  *Id.* at 1145 (internal citations omitted).   The suspicion must be more than an "inchoate and unparticularized suspicion or hunch."  Id.   However, the standard is less demanding than probable cause.  *Id.*   Hence, there need only be a "minimal level of objective justification" for making the stop.  *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000)(quoting, *Illinois v. Wardlow*, 528 U.S. 119 (2000)).   Notably, an officer need not catch a person committing a crime, holding a weapon or even concealing a weapon to form reasonable suspicion; it may be formed by observing completely legal activities.  *U.S. v Gordon*, 231 F.3d 750, 754 (11th Cir. 2000).

The Eleventh Circuit has reiterated that a court, in analyzing a detention, should determine the balance between the "public interest and the individual's right to personal security free from arbitrary interference by law enforcement officers."  *U.S. v. Francis*, 2005 U.S. Dist Lexis 14294 (11th Cir., July 14, 2005)(citing, *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)).   In balancing interests, courts should be cognizant that law enforcement officers face inordinate risks while performing their duties, even in such seemingly innocuous occurrences as traffic stops.  *U.S. v. Francis,* at *4.

Again, here KUNCAS responded to a dispatch following a 911 call from a citizen that was concerned that Plaintiff was walking through town carrying what the caller believed to be a shotgun.  Plaintiff was then observed walking with a flag and high-powered weaponry carried openly, include an AR-15, a weapon associated with mass shootings.  KUNCAS acted well-

9

within reasonable suspicion when he temporarily detained Plaintiff to determine whether his actions were lawful, and whether he had the right to openly carry such weapons.   In the course of doing so, KUNCAS was permitted to and did in fact request that Plaintiff identify himself, which would have allowed KUNCAS to check applicable databases for wants and warrants, licenses, as occurs at even traffic stops for the most minor non-criminal traffic offenses.   Plaintiff refused to identify himself even after being informed that he was being detained.   D.E. 1-1, ¶¶41-49.

Section 843.02, *Fla. Stat.*, broadly prohibits resisting, obstructing or opposing an officer executing any legal duty.   In *N.H. v. State*, 890 So.2d 514 (Fla. 3d DCA 2005), a Florida appellate court found that refusing to identify oneself during a lawful stop falls within the statute, even if the police do not have probable cause to arrest.   Accordingly, since Plaintiff was lawfully stopped and temporarily detained, and refused to identify himself upon request, probable cause existed to arrest him for violating this law.   Even if probable cause did not exist, KUNCAS would be entitled to qualified immunity since a reasonable officer could have believed that Plaintiff's refusal to identify himself during a lawful detention interfered with his investigation, thus entitling KUNCAS to qualified immunity.

Based upon the foregoing, Defendant respectfully moves for summary judgment.

<u>**CERTIFICATE OF SERVICE**</u>

    ***I HEREBY CERTIFY*** that on this 17th day of August, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system or by email to all parties. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non-CM/ECF participants and/or the following document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants. A copy was also sent via email to Plaintiff at **stoutstoutstoutproselitigation@gmail.com.**

                         <u>/s/ *Scott D. Alexander*                  </u>
                          Scott D. Alexander, Esq.
                          Fla. Bar No. 057207
                          Johnson, Anselmo, Murdoch, Burke, Piper
                          & Hochman, P.A.
                          ***Attorney for Defendant, Officer A. Kuncas***
                          2455 East Sunrise Boulevard, Suite 1000
                          Fort Lauderdale, Florida 33304
                          Tel: 954 463-0100
                          Fax: 954 463-2444
                          alexander@jambg.com; sda-assistant@jambg.com andrews@jambg.com